13063

GRESHAM v. AETNA LIFE INSURANCE CO.

(156 S. E., 878)

March , 1930.

*Messrs. McKay & Manning* and *McDonald, Macaulay & McDonald,* for appellant,

*Messrs. Douglas & Douglas,* for respondent,

January 5, 1931.

The opinion of the Court was delivered by Mr. Justice Stabler.

An action brought by a certificate holder insured under a group policy of insurance taken out by the Winnsboro Mills with the defendant company upon its employees; the certificate being issued subject to the terms and conditions of the policy and for the sum of $2,000. The policy provides, in part: "If any employee, before attaining the age of sixty years and while insured hereunder, becomes totally disabled and presumably will thereafter during life be unable to engage in any occupation or employment for wage or profit. * * * such employee shall be deemed to be totally and permanently disabled. Upon receipt at the home office of the company, during the continuance of insurance on such employee, of satisfactory evidence of such disability, the company will pay the amount of insurance in force upon such life at the time such disability commenced, in lieu of all other benefits provided for on such life under this policy, by that one of the following optional methods that shall be designated and requested."

Paragraph 6 of the complaint is as follows: "That the plaintiff is now thirty-two years of age, and that on or about the fifth day of August, 1929, plaintiff being then an employee of the said Winnsboro Mills, was taken sick and ill with a bodily disease, presumably tuberculosis of the lungs, and has continuously since that time been incapacitated from doing any work, and has become totally disabled and presumably will hereafter during life be unable to engage in any occupation or employment for wage or profit, and is totally and permanently disabled."

The plaintiff designated the optional method providing for payment to a disabled employee of the amount of his certificate in one sum.

The answer was in effect a general denial.

The jury rendered a verdict in favor of the plaintiff for the face of the policy, interest, and costs. From an order refusing its motion for a directed verdict and from certain portions of the charge, the defendant appeals.

The trial Judge charged in part as follows: "Now, it is up to the plaintiff to show you that he has such a disease—he says here, presumably, tuberculosis. Now, he has to prove to you—he doesn't necessarily have to prove that he had tuberculosis; but he has to show you that he had some kind of disease, now, that made him unable to perform his usual duty; and it must be such a disability that you can infer from the evidence, and reasonably infer, that that will be of a permanent nature, and under the language of the policy, will endure for his life. You judge that from the testimony in the case. *It doesn't mean, now, that he must be entirely disabled from performing anything; it means that he must not be able to perform—that he will not be able to perform those things he is trained for—his customary duty; follow the business he is trained for, or some business similar to that. If he has to go out and-learn some other business, the Supreme Court says it means he has a right, when he makes a contract of this sort, to be insured against disability— against disability from performing the business in which he is engaged.*"

Appellant excepts to the italicized portion of this charge on the ground that it confined the question of disability to the performances of the business in which the plaintiff was engaged at the time the contract of insurance was made, whereas there was evidence that plaintiff was not only a mill operative but had also been engaged in farming.

The trial Judge also charged the jury as follows: "The plaintiff must show you he must not be temporarily sick; and if from the testimony you infer that he will be—you come to the conclusion that it is just temporary, and he can be cured—why, you must come to the conclusion that it is

permanent from the sense of enabling him to do his usual business; and under the language of this policy, must give you evidence that will enable you to infer that the disease, if he has any disease—you could reasonably infer that it will continue, and he will be disabled through his life, from performing, now, the usual business for which he has been trained."

Appellant excepts to this part of the charge on the ground that plaintiff would not be entitled to recover if he could reasonably engage in other gainful occupation, and that the testimony failed to show that work in a cotton mill, which was his usual business, was the only work he could perform; the clear inference from the testimony being that work in the open, such as farm work, would be proper for him.

In *McCutchen v. Life Insurance Co.*, 153 S. C., 401; 151 S. E., 67; earlier cases were reviewed and a policy provision very similar to the provision above quoted was construed. This Court approved the following instructions, given at plaintiff's request:

"The words 'total disability,' as used in the policy of insurance introduced in evidence, does not mean as its literal construction would require, a state of absolute helplessness, which can result only from loss of reason, since, as long as one is in full possession of his mental faculties, he is capable of transacting some part of his business, whatever it may be, although he is incapable of physical action. On the contrary, the Courts, giving consideration to the object of the contract, hold that the 'total disability' contemplated by the agreement is inability to do substantially all of the material acts necessary to the prosecution of the insured's business or occupation, in substantially his customary and usual manner. * * *

"The insured is deemed 'totally disabled' when he is no longer able to do his accustomed task, and such work as he has only been trained to do, and upon which he must depend for a living."

And sustained the refusal to charge defendant's request as follows:

"I charge you further that this written contract does not mean that he is simply disabled so that he cannot follow his own trade or business; if you find from the evidence that he retains physical ability sufficient for the pursuance of other avocations or business, in which he might engage for profit or remuneration, then he is not totally and permanently disabled under the terms of the policy which we have before us. As an illustration:

" 'If a man was an engineer on a train and was injured and claimed to be wholly disabled, the fact that he might be unable to run an engine would not be sufficient where it appears that he could engage in other business for profit, or follow another gainful occupation. The fact that a man might be disabled for his own business does not mean under the terms of a policy like this that he can sit down and not try to do other kinds of work."

The testimony in the instant case tends to show that plaintiff lived on a farm until he was about 16 years of age, engaged in hauling hardwood for about two years, and then went into textile work in a cotton mill, continuing to do such work for about fourteen years, with the exception of one year spent on a farm. It is this testimony as to farm experience which, appellant maintains, shows that plaintiff was capable of performing other than textile work, and which forms the basis of the exceptions to the charge; the contention being that, under the law as laid down in the *McCutchen case* and the testimony in the case at bar, the question whether the plaintiff was trained for farm work should have been submitted to the jury for their consideration in determining whether he was "totally disabled," under the terms of the policy, while the instructions given limited the jury to a consideration of the question whether he would be able to pursue his usual occupation of a textile worker.

If there was error in the charge as complained of—which we do not concede—it was not prejudicial to the defendant. More and more farming is being reduced to and based upon scientific principles, and to farm successfully one must have training, through study, proper experience, or both. Many a boy spends his tender years on a farm without learning much about the business. Plaintiff left the farm at an early age to engage in other work; later he returned to it, but went back, after a year, to the cotton mill. We do not think the testimony would sustain a finding that he was "trained" in farming; on the contrary, his connection with the farm was casual or incidential, his customary occupation, that for which he was "trained" and to which he looked for a living, being that of a textile operator. Furthermore, the disease attempted to be shown by the testimony, and which the jury found the plaintiff to have, was tuberculosis, which, it is well known, makes it impossible or, at most, in mild cases, inadvisable, for the sufferer to engage in strenuous physical labor. The testimony shows that the plaintiff did not own a farm or any other property, and therefore he would be dependent upon his physical labor for any living which he might obtain from the farm. Under no view of the instructions complained of, therefore, should the case be remanded for a new trial.

Appellant's motion for a directed verdict was made on the ground that there was not sufficient evidence in the case to establish a disability that presumably would last through life—to establish a presumption that thereafter during life the insured would be unable to engage in any occupation or employment for wage or profit. In his argument, appellant's counsel very properly concedes that the testimony, being taken in the light most favorable to the plaintiff, tended to show that plaintiff was afflicted with tuberculosis, and that, after a cure of this condition, it would not be safe or advisable for him to return to work in the cotton mill, but maintains that it also shows he was steadily improving in

weight, strength, and general condition, and could do work that would keep him out of doors; reliance being especially had upon the testimony as to his farm experience. What we have already said is applicable here. There was testimony tending to show that in some cases tubercular patients die from the dread disease even when they appear to be improving, and there was other testimony from which the jury might have inferred "total disability" on the part of the plaintiff at the time of the trial and a presumption that such disability would continue throughout his life.

The judgment of the Circuit Court is affirmed.

MR. CHIEF JUSTICE BLEASE, MR. JUSTICE CARTER, and MR. ACTING ASSOCIATE JUSTICE COSGROVE concur.

MR. JUSTICE COTHRAN dissents.