13889

JONES v. EQUITABLE LIFE ASSURANCE SOCIETY OF
UNITED STATES

(175 S. E., 425)

*Messrs. Douglas & Douglas,* for appellant,

*Messrs. Thomas, Lumpkin & Cain* and *McDonald, Macaulay & McDonald,* for respondent,

July 20, 1934.

The opinion of the Court was delivered by MR. CHIEF JUSTICE BLEASE.

In the Court of Common Pleas for Fairfield County, the plaintiff in this case, one for "total and permanent disability," under the terms of a policy of insurance issued by the defendant insurance company, obtained a favorable verdict for the full amount of his demand.

At the conclusion of all the evidence, the defendant moved for a directed verdict in its favor, on the sole ground that "the evidence offered in the case is susceptible of only one reasonable inference, such inference is that the insured is not totally and permanently disabled as a result of bodily injury or disease, within the purview of the contract." His Honor, Circuit Judge Dennis, presiding at the trial, in response to that motion, suggested, in effect, to counsel for the defendant, that no argument be made on the motion for a directed verdict at that time; that the motion be considered as refused, and the jury be permitted to return their verdict, and, in the event of a verdict unfavorable to the defendant, that he would consider the matter fully on a motion for a new trial, thereby obviating, perhaps, the necessity of another trial, if this Court should sustain or reverse the final conclusion he might reach. The suggestion seems to have been agreed to by both the parties.

Later, after hearing argument by the defendant on its motion for a new trial, the verdict rendered was set aside and vacated, and a directed verdict in favor of the defendant was entered. The order was based on two grounds, stated therein, in the language of the trial Judge, as follows: (1) "The only inference to be drawn from the testimony is that the insured is not permanently and totally disabled within the coverage of the certificate of insurance, as that term has been defined by our Supreme Court;" and (2) "The testimony clearly established that the insured could have fully removed such impairment of health as exists if he had followed the advices of his physician and subjected himself to the treatment prescribed for him. Although the certificate of insurance carries no provisions thereabout, it was the clear duty of the insured, under the general principles of law, to do what a reasonably prudent person would have done in order to restore himself to health and thereby minimize his damages. This the testimony shows the insured did not do. Accordingly, I am constrained to hold that the verdict of the jury was against the overwhelming weight of the evidence and the law as charged to them."

From the order adverse to him, the plaintiff has appealed to this Court.

It appears to be conceded by both the appellant and the respondent, and we think properly so, that the appeal involves only questions of law, and that the judgment of this Court is to finally end the cause; that is, if the order of the Circuit Judge is affirmed, the directed verdict in favor of the respondent will stand, while, on the other hand, if that order is reversed, the verdict of the jury in favor of the appellant will be restored, and the judgment of the lower Court will be entered in accordance therewith.

The legal questions, however, depend upon the facts as adduced in the evidence, for, under the general rule so long recognized by this Court, if there was evidence, or such evidence from which reasonable inference

might be drawn, sustaining the appellant's cause of action, then the trial Judge was right in submitting the issues to the jury, and he was in error in later setting aside the verdict rendered and directing a verdict in favor of the respondent.

We are not concerned with the evidence favorable to the insurance company. We are to ascertain, first, if there was evidence from which a reasonable inference might be drawn that the insured was permanently and totally disabled within the meaning of the policy terms.

The appellant testified that, at the time of the trial, October, 1933, he was 32 years of age; that he was a textile employee, with fifteen years' experience, and trained in no other class of work; that his work required considerable physical exertion and standing; his hours of work, when employed, were usually from 6 o'clock in the afternoon to 5:30 o'clock in the morning; he was taken ill in January, 1931, and in July and August of that year was unable to work any for about eight weeks; working occasionally then, he finally had to quit his employment in the cotton mill in June, 1932, and had continued, since that time, ill and under the care of a physician; not being able to do textile work, he moved to the country where he worked a very small garden, and occasionally sold a little truck, and did a little light work, assisting the gentleman who rented him the home, in which he lived, in repairing a house; on account of his physical condition, he obtained some relief from the Civil Works Administration. His illness was due to an ulcer of the stomach. Dr. J. E. Douglas, Sr., a witness for the appellant, and Dr. Samuel Lindsay, a witness for the respondent, so testified. Dr. Douglas said, that, in so far as the occupation for which insured was trained was concerned, he regarded him as "totally and permanently disabled"; that he would "give down under" that work, and, on account of the ulcer, he would have to continue his treatments all the time and be careful the balance of his life. Mr. Frank Snowden, on whose place insured resided, kindly furnished him a cow so that he might have milk beneficial for his ailment.

Mr. Snowden said he saw the appellant fall from dizziness; in his opinion, he was not a well man, and, in February of 1932, appellant seemed to be in a pretty bad condition, and generally, his complexion was "pale and white." Dr. Lindsay, while declining to pronounce the appellant as being permanently disabled, apparently regarded him as being in a bad physical condition, although he thought an operation would relieve him.

The terms of the policy as to "total and permanent disability" were as follows:

"If proof shall be furnished the Society that any Employee insured under the aforesaid policy has before having attained the age of 60, become wholly disabled by bodily injuries or disease, and will be wholly and presumably permanently prevented thereby for life from pursuing any and all gainful occupation, the Society will pay six months after receipt of such proof in full settlement of all obligation under the said policy pertaining to such Employee, the full amount of the insurance on such life either in a single sum; or (certain options not pertinent).

"It is further agreed that the entire and irrecoverable loss of the sight of both eyes or the loss of use of both hands or of both feet, or of one hand and one foot will of themselves be considered as total and permanent disability within the meaning of this provision."

There is no question as to the insured furnishing the required claim.

Referring to the proof required of the appellant, as to his permanent and total disability, the learned trial Judge, in his charge, followed the principles declared by this Court in numerous cases, and read to the jury from a syllabus of *McCutchen v. Pacific Mutual Life Insurance Company,* 153 S. C., 401, 151 S. E., 67, the following: "Under policy insuring against 'permanent total disability,' defined therein as disability caused by injury or disease which totally and permanently * * * prevents insured from performing

any work or engaging in any occupation or profession for compensation or profit, it is not necessary that insured be wholly prevented from performing any work or engaging in any gainful occupation, if he be disabled from following the accustomed trade or business for which he has been trained"—and to that he added this, "That is, a man hasn't got to be absolutely helpless."

The given instructions, which are not questioned in this appeal, were in accord with the principles declared in the *McCutchen case*, and, in addition, they are supported by other decisions, among them the following: *Taylor v. Insurance Co.*, 106 S. C., 359, 91 S. E., 326, L. R. A., 1917-C, 910; *Berry v. Insurance Co.*, 120 S. C., 328, 113 S. E., 141; *Brown v. Insurance Co.*, 136 S. C., 90, 134 S. E., 224; *Gresham v. Insurance Co.*, 159 S. C., 326, 156 S. E., 878; *Caldwell v. Insurance Co.*, 170 S. C., 294, 170 S. E., 349, 351; *Austell v. Insurance Co.*, 170 S. C., 439, 170 S. E., 776; *Black v. Insurance Co.*, 171 S. C., 123, 171 S. E., 617; *Dukes v. Insurance Co.*, 172 S. C., 502, 174 S. E., 463.

In the very recent *Caldwell case*, decided on July 19, 1933, Mr. Justice Bonham, for this Court, quoted with approval the following declarations from the *McCutchen case*: "It is not the function of the Court in such cases to weigh the testimony, but simply to determine if there is any relevant and competent testimony adduced reasonably tending to establish the material elements in the plaintiff's cause of action. As well and concisely stated by the Court in the case of *State v. Villepigue*, 127 S. C., 393, 121 S. E., 258, 259, in such motions, 'It is for the Judge to determine the existence of such evidence; the effect or force thereof is for the jury.'"

The "relevant and competent testimony adduced," related heretofore, in our opinion, was such as "reasonably" tended "to establish the material elements in the plaintiff's cause of action," and, accordingly, we think there was error in the holding of the Circuit Judge, on the

motion for a new trial, to the effect that there was no evidence from which a reasonable inference could be drawn as to the permanent. and total disability of the insured within the meaning of the contract terms.

The legal principles recognized by the trial Judge in the second ground, on which he based his order were similar to instructions given by him in his charge to the jury. Therein he stated:

"I want to charge you further, gentlemen, in the law, that a man insured against permanent disability, is required to minimize his damages, or minimize his injury. Minimize means to make it less apt to be serious; less apt to be permanent. And if a man has an ailment which an ordinarily prudent—a man of ordinary prudence and judgment— would follow the advice of a physician, a competent physician, and take a course of treatment, would be relieved, or would submit, under the advice of a competent physician, to an operation, which a man of ordinary reason and prudence under all the circumstances would submit to, under such advice, and if such treatment or such operation would lessen the probability of permanent disability, or would cure the disability at that time, then it would be his duty to do it.

"Now, you notice how I express that. Some men would be so afraid of an operating table that they wouldn't submit to an operation at all. You are not to go by that. Some people might be so rash that they would want to go on the operating table for anything or for any little ailment. We can't be guided by them. You take, what would a man of ordinary judgment and prudence and good sense, acting under the advice of a competent physician, do. And if under those circumstances that man would submit to a course of treatment, following it out faithfully, under the direction of the doctor, he should submit to an operation under the advice of that doctor. Now, of course, he wouldn't be called upon to do anything dangerous, to submit to an operation that might prove fatal. Now, you have heard the doctors

testify about it in this case. Applying that rule as I have given it to you, you apply it to the evidence in this case."

The judge also expressed himself favorably to the same principles in his rulings in the admission of testimony on the part of the insurance company, over the objection of the appellant, tending to establish that the insured would not have had a condition of permanent and total disability and that he would not in the future continue to have such condition, if he had, under the advice of a competent physician, followed a course of treatment, or if he had submitted to a proper surgical operation, either of which the respondent claimed would have relieved the ulceration of the stomach.

The learned jurist, on the motion for a new trial, frankly said that it appeared his holdings did not have support in any decision of this Court, as it did not seem that the question has ever been passed upon in this State, and, with equal frankness, he stated, "if I am wrong we will have the way blazed out for the future."

Unfortunately, perhaps, we cannot in this case "blaze the way for the future." The exceptions of the appellant do not in any manner question the correctness of the legal principles, recognized by the learned trial Judge in the second ground, on which he based his order for a directed verdict in behalf of the respondent, or his instructions to the jury, declaring those same principles, or in the rulings on the admission of testimony, which, in effect, were in line with those instructions. For the purposes of the appeal, counsel for the appellant appear to concede the correctness of the views of the trial Judge. The exceptions seem to us only to charge error in the holding, in the order appealed from, as to the insufficiency of the evidence to show that the insured had done what was reasonably required of a man of ordinary prudence and judgment to relieve himself of the physical affliction from which he suffered. Stated somewhat differently, the only question we have to determine is this: Under the quoted instructions to the jury, was there any

evidence to require the submission of the issue made thereby to the jury?

Before proceeding to a discussion of the stated question, we may remark that, like the trial Judge and the attorneys for both the appellant and the respondent, we have been unable to find any decision of our Court in point. Only a few cases from other jurisdictions, so far as we are advised, appear to have relation to the subject. Those are referred to in that valuable work, A. L. R., Annotated, Vol. 86, beginning at page 354, where the case of *Cody v. John Hancock Mutual Life Insurance Company*, 111 W. Va., 518, 163 S. E., 4, is reported in full. The Supreme Court of Appeals of West Virginia, in that case, held, quoting from the first syllabus, "A party who carries insurance against physical disability must, as a general rule, in order to minimize disability which has overtaken him, submit to treatment to which a reasonably prudent man would ordinarily submit."

According to the annotation, the Supreme Court of Mississippi, in the case of *Liberty Life Assurance Society v. Downs*, 112 So., 484, while apparently not going so far as the West Virginia Court went, did hold that, where the insured could be cured by a simple operation, it was his duty to submit to the same, if he was reasonably able to undergo it, before he could be regarded as being permanently disabled, within the meaning of the language in insurance contracts against permanent and total disability.

On the contrary, the Tennessee Court of Appeals, in the case of *Tittsworth v. Ohio National Insurance Company*, 6 Tenn. App., 206, decided, according to the annotator, that "An insurance company cannot take advantage of the refusal of the insured to submit to a simple surgical operation, even though reasonable under the circumstances, for the removal or alleviation of his disability, unless the policy expressly provides therefor." And the Supreme Court of Kansas, also says the annotator, in the case of *Maresh v. Peoria*

*Life Insurance Company,* 133 Kan., 191, 299 P., 934, held in line with the conclusion of the Tennessee Court.

Since it so clearly appears that what we might say at this time as to the holdings of the trial Judge, to which we have before referred, would only be *obiter,* and preferring not to attempt to bind or even advise the Court in the future, until the question is properly presented, we think it best to refrain from expressing any opinion as to the holdings of the Circuit Judge. Accordingly, for the decision of this case, and for that purpose alone, we accept, as declaring proper legal principles, the instructions he gave to the jury.

Was there any evidence in the trial, tending to show that the appellant did what "a man of ordinary prudence and judgment" would have done, followed "the advice of a physician, a competent physician, and take a course of treatment"? Did the evidence show that the appellant, under the circumstances, refused to follow the advice of a competent physician, and refused to submit to a surgical operation, which was not "dangerous," or which "might prove fatal," as defined by the trial Judge?

Dr. Lindsay, the examiner and a witness for the insurance company, who more than any other physician treated the appellant, testified that he prescribed for him the usual course of treatment, consisting of "belladona and bismuth solution after meals, and put him on a diet, principally." Asked if the insured followed his directions, he replied, "I am afraid not," and, if he had followed it, it was his opinion that his condition would have been relieved. But we do not find that Dr. Lindsay ever testified that he had advised the insured to have a surgical operation. And this physician testified that, while an operation might relieve the condition of the insured, "he might have a recurrence." He further said that an operation might not be necessary, if the course of treatment he had prescribed was properly followed, and, according to him, while there was no grave danger usually from an operation for an ulcer of the stomach, it was neces-

sary in such operation to open the abdomen; that it was "a serious thing to open the abdomen," and the patient might die under the operation; that even after an operation there might be a recurrence of the ulcer; and that a sufferer from one "would have to be very careful."

Dr. J. C. Buchanan, Jr., also a witness for the respondent, said that an operation would relieve the condition caused by ulcer of the stomach, but at present the medical profession preferred medical treatment rather than an operation; that a patient in such operation had to be put to sleep, and while the mortality rate in such cases was very low, "any time you put a patient to sleep, you have a certain amount of risk."

Dr. Douglas, witness for the appellant, who himself had undergone an operation for ulcer of the stomach, said that such operations were always "right serious"; that, even after the ulcer had been removed by the operation, there was danger of recurrence.

The appellant testified that he took the medicines, as prescibed by Dr. Lindsay, and as near as he possibly could stayed on the diet he was directed to follow. He had no recollection of ever having been advised by Dr. Lindsay to have an operation, but Dr. McCants had expressed the opinion that an operation would relieve his condition; that, at the suggestion of Dr. McCants, he went to the service man at the mills, where he was employed, about the operation; that this gentleman sent him back to Dr. McCants, who, in turn, sent him back to the service man, and there the matter ended; he had no means, without assistance from some one, to obtain the operation, even if it was thought proper.

The wife of the appellant swore that he "tried as near as he could to take the treatment the doctors advised him. He wasn't able to buy it all the time. This Relief has helped him; and he has been getting eggs and Irish potatoes, and he had

a cow, and drinking milk and oats (oat meal) and such like as that, and little things along."

So far as the record shows, the insurance company at no time, through any of its officers, agents, or physicians, ever asked or suggested that the appellant should take any treatment other than that which he was following, or that he should ever undergo a surgical operation, and at no time was the appellant, who, in part, was living on the charity of the federal government, offered by the insurance company any financial assistance to aid him in the recovery of his health.

Under the evidence, to which we have called attention, it is our opinion that the Circuit Judge was wrong in holding that there was no evidence to go to the jury on the issue submitted by him, under the instructions he gave, which instructions, in any event, were very favorable to the insurance company.

It is our judgment that there was legal error on the part of the Circuit Judge in the order granting a new trial and directing a verdict in favor of the respondent; that the verdict of the jury, under the law, should be upheld, and judgment thereon entered in favor of the appellant; accordingly, it is so ordered.

MESSRS. JUSTICES STABLER, CARTER, and BONHAM, and MR. ACTING ASSOCIATE JUSTICE W. C. COTHRAN concur.