14012

FORD v. NEW YORK LIFE INS. CO.

(180 S. E., 37)

*Messrs. Osborne & Butler* and *McDow & Hildebrand*, for appellant,

*Messrs. Hart & Moss,* for respondent,

March 5, 1935.

The opinion of the Court was delivered by Mr. C. J. Ramage, Acting Associate Justice.

On May 10, 1933, the respondent herein commenced two actions in the Court of Common Pleas for York County.

Each action was for the recovery of certain disability benefits alleged to be due under two separate policies of insurance, together with premiums paid during such period of disability.

On October 31, 1921, John M. Ford, the plaintiff, was issued two policies of insurance with the appellant-company. The policies were of the same date, each in the sum of $2,000.00, and each identical in wording. The only difference was in the number of the policies.

On April 12, 1932, John M. Ford became totally disabled and on that date made proof to the defendant company of his disability, and demanded payment of $20.00 per month under each policy, this being the monthly payment provided in the policies in case of total and permanent disability. This demand was refused, and action was brought on each policy, asking for the sum of $260.00, representing thirteen months' disability at $20.00 per month, and also the sum of $80.70, premiums paid on each policy during this period of disability and which, under the terms of the policy, he was entitled to recover if disabled.

The complaint alleges that proof of disability was duly made. The defendant admits that plaintiff did furnish some forms in which he claimed to have been totally and permanently disabled, but denied that he was totally and permanently disabled. The proof of disability, as filed by plaintiff, is not set forth in the printed case, as prepared by appellant, and its contents are referred to in the cross examination of Dr. Dulin.

By Exception 1 the appellant alleges error in requiring a consolidation of the two actions. The policies in question were identical as to dates, amounts, and provisions. They differed only as to numbers. Suits on both policies were started the same day. The testimony and law were applicable alike to each policy. If there had been two

trials, one on each policy, the second trial would have been but a repetition of the first, with the same witnesses and the same testimony. The Court, in order to save time and the expenses of the trial, consolidated the two suits for trial.

The appellant admits, in its brief, that the plaintiff could have at the outset consolidated the two actions by setting forth separately in the same complaint. This could have been done pursuant to provisions of the statutes. Section 487, Code 1932.

Quoting from 1 R. C. L., 359: "It is a common practice to consolidate actions pending in the same Court that might have been brought in one action, the purpose of the consolidation being to prevent a multiplicity of suits. Formerly it was considered that a Court of chancery had no power to consolidate causes pending therein, but the rule at the present day is the same in equity as at law. Independently of statutes, the power of consolidation has been exercised with the greatest freedom, according to the will of the particular Judge before whom the actions consolidated have been pending, to subserve the interest of the parties and the public. * * * The consolidation of actions is not, in the absence of statutes, a matter of right but rests in the sound discretion of the Court, and its discretion will not be interfered with unless abused. The actions sought to be consolidated must be pending in the same Court, and generally between the same parties, though not always, and should relate to substantially the same question or transaction involving substantially the same defenses, providing a defense is intended."

Applying the tests above set forth, we find that each of same causes was pending in Court and between the same parties and relates to the same question. It took the same proof to make out the allegations of the complaint, and the defense in each case was identical. The Court properly consolidated the two actions for the purpose of trial.

In the case of *Barrett v. Broad River Power Company,* 146 S. C., 85, 143 S. E., 650, 653, Mr. Justice Blease quotes

the above citation from Ruling Case Law with approval and further says:

"Speaking for this Court, Mr. Justice McIver said:

" 'It has long been settled, in this State at least, that a motion to consolidate is addressed to the discretion of the Court; not, of course, an arbitrary or a capricious discretion, but a legal discretion, to be exercised in view of all the surrounding facts and circumstances.' *Pelzer Mfg. Co. v. Sun Fire Office,* 36 S. C., 213, 15 S. E., 562." And further he says: "When two causes of action pleaded are so allied in substance, time, and parties as to make them so akin, they may be tried together. *Cline v. Southern Railway,* 110 S. C., 534, 96 S. E., 532. When they may be tried together, and there is no real good reason for separate trial, why should they not be tried together?

"Although the provision quoted from the Code may have been enacted for the benefit, mainly of plaintiffs, it can, and should, be invoked, in a proper instance, for the protection of defendants. While a plaintiff has the right, in the first instance, to elect if he will unite his several causes of action in one suit, the Court, as shown by the authorities before mentioned, may require him to try all of them together, if he refuses to unite."

And again quoting from the same case: "Where actions may be properly consolidated without injury to any of the parties, that course should be taken to prevent a multiplicity of suits, to save costs to the parties themselves, to conserve the time of the Court, to clear congested dockets, and to help the taxpayers, who bear the expenses of maintaining Courts."

In the case of *Byrd v. State Highway Department,* 159 S. C., 181, 156 S. E., 454, 455, the question of consolidation was again before the Court, and the *Barrett case, supra,* was approved, and Mr. Justice Stabler, in passing upon an appeal from an order refusing motion of the defendant to consolidate for trial four separate cases brought against it by plaintiff, says: "The four actions now before us are all

in tort and grew out of the same act or acts of alleged negligence, or the same transaction; they are pending in the same Court, between the same parties, and involve substantially the same defense and all of them might have been united in one complaint. The motion for consolidation, therefore, should have been granted."

Likewise in the case of *Bishop v. Bishop,* 164 S. C., 493, 162 S. E., 756, the Court again passed upon the question of consolidation for trial, but held in the *Bishop case* that the five cases should have been tried separately because the parties were not the same, the injuries were different in nature and degree and hence held that the Court was in error consolidating the causes for trial.

The trial Judge properly consolidated the two actions in this case for trial because they grew out of the same or like contracts, they are pending in the same Court, between the same parties, and involve the same defenses, and both of them could have been united in one complaint, and hence the trial Judge has not abused his discretion, but, on the contrary, has properly exercised such.

By Exception 2 it is alleged that the presiding Judge ■ committed error in refusing to permit appellant's counsel to cross examine the respondent on the question of the details of his activities, before and after the date of his alleged disability. Counsel for the appellant cross examined the respondent herein in the minutest detail with reference to his activities in 1931, prior to the date of alleged disability, in connection with the operation of his store and with reference to his dealings in produce, cord wood, corn, hogs, and different things. The respondent was examined with reference to his operation of a truck with reference to his farming activities; with reference to his work for the York County relief council. And throughout the cross examination, it appears that all of the acts and doings of the respondent were inquired into by appellant's counsel, and appellant's counsel had opportunity afforded

him for a full and complete comparison of respondent's activities, both before and during his disability.

The appellant alleges that the presiding Judge committed error in stopping him in his cross examination with reference to cord wood. It will be noted that the respondent had been examined at length concerning his dealings in cord wood and live stock, and the Court simply kept counsel from repeating or covering the same ground several times. This cannot be urged as error.

As this Court has said where evidence is merely cumulative it is not error to exclude the same. This was held in the case of *McClintock v. Railway Company,* 83 S. C., 58, 64 S. E., 1009. To the same import see the cases of *Beaudrot v. Southern Rwy. Co.,* 69 S. C., 160, 48 S. E., 106; *Talbert v. Western Union Tel. Co.,* 83 S. C., 68, 64 S. E., 862, 916; *Wyatt v. Cely,* 86 S. C., 539, 68 S. E., 657.

Exceptions four, five, eight, eleven, twelve, thirteen, fourteen, and fifteen allege error on the part of the presiding Judge as to his rulings on the question of cure.

Of these, exceptions four, five, and eight relate to the refusal of his Honor to permit cross examination and examination of medical witnesses on the question of treatment and cure of the plaintiff. The appellant examined Dr. Dulin, a witness for the plaintiff, as to the possibility of cure and what would correct the condition of respondent's health, and certainly the Court did not prevent appellant from an examination as to the possibility of cure.

The Court charged the jury, at the request of the appellant: "If you find that Mr. Ford is and has been suffering from intestinal sepsis, but that it is not a total and permanent disability, but is a condition which, by proper treatment, can be remedied or corrected so as to enable Mr. Ford to resume his normal occupation, if he has ever ceased to do so, then he will not be totally and permanently disabled. In that event your verdict must be for the defendant. But it is for you to say, gentlemen, from all the testimony

whether or not it is a permanent and total disability as I have charged you the law of total and permanent disability." By this charge, the presiding Judge submitted the question of proper treatment and the question of cure of respondent's disability to the jury.

We likewise call attention to the examination of Dr. W. B. Jones, a witness for the appellant, as to treatment and proper cure of respondent.

Also, Dr. Lienbach, a witness for the appellant, was asked as to treatment and probable cure.

During the examination of Dr. Dulin, a witness for the respondent was asked if respondent would not be cured by removing the faulty diet.

The Court took the view, and properly found, that the issue in the case was whether or not the plaintiff was totally and permanently disabled within the meaning of the policies, between April 12, 1932, the date of the filing of the proof of disability, and May 10, 1933, the date suit was commenced. The complaint asked for disability payment only during this period. Should plaintiff remain disabled, and the defendant decline payment, then plaintiff's remedy is another suit. Should he recover in one, five, or ten years and the disability ceases, the appellant would no longer be liable for payments.

Is the respondent required to submit to an operation or treatment, speculating on a cure? This has not been decided by our Court. In the case of *Jones v. Equitable Life Assurance Society of the U. S.,* 173 S. C., 213, 175 S. E., 425, the question of cure is discussed and the differences of the Courts of other states are cited, in which the opinions are divided. But such a question is academic here, because the respondent did submit to two operations. He had his appendix and tonsils removed. In his efforts to obtain a recovery, he consulted the best medical talent available to him. A list of the physicians consulted by the respondent in his effort to regain his health is shown.

There is no evidence that any other operation was recommended, or that the respondent did not follow the treatment prescribed by the physicians he consulted.

The Court never ruled that the appellant could not ask all the questions it desired as to the disability during the period sued upon or as to its probable cure during this period.

There are several reasons why insured should not be required to submit to corrective surgical or medical treatment.

1. The insurance contract does not contemplate, nor was it in the minds of the parties at the time of the making, that should the insured become totally and permanently disabled, that he should submit himself to surgical or medical treatment. A review of the disability clause in the policies sued upon show this to be the fact. In the case of *Tittsworth v. Ohio Nat. L. Ins. Co.*, 6 Tenn. App., 206, the Court held that an insurance company cannot take advantage of the refusal of the insured to submit to a surgical operation, even though reasonable under the circumstances, for the removal or alleviation of his disability, unless the policy expressly provides therefor. Again, in the case of *Maresh v. Peoria Life Ins. Co.*, 133 Kan., 191, 299 P., 934, 937; *Id.*, 133 Kan., 654, 3 P. (2d), 634, the issue was whether the insured's disability was permanent and in which the insurance company requested the Court to instruct the jury to the effect that it was the duty of the person insured to exercise every reasonable effort to aid recovery. In answer, the Court said: "The contract does not so provide. No doubt it is the moral duty of every person to make the most of himself under even the most adverse circumstances; but the issue in this case was whether plaintiff's disability was permanent."

2. The policy provides that should the insured recover from his disability and that he is again able to engage in any occupation for remuneration or profits, then his disability payments shall cease, and the payment of any pre-

miums thereafter falling due shall not be waived. A determination in this action that the insured is totally and permanently disabled will not be a final adjudication of the fact, and if in the future the respondent should recover from his disability, then the insurance company is amply protected in its rights.

3. As also said by this Court in the case of *Black v. Jefferson Standard Life Insurance Company,* 171 S. C., 123, 171 S. E., 617, 619: "Then, again, the policy provides that, if the insured should fail to furnish due proof (of his continued total disability) or if he should recover (regain his health); then the monthly payments should cease and the payment of premiums should be resumed. This provision of the policy was before the Court, and shows that the disability, although seemingly and presumably permanent, might be removed. It might have been removed at some time between the commencement of the action and the date of the trial. By the complaint the defendant was called upon to defend the action as it then existed, and could, with propriety, have objected to any testimony touching the disability of the plaintiff or his physical condition after the action was begun."

In the *Black case, supra,* the Court had to consider a disability clause of an insurance policy similar to the one here, and the Court announced the rule that it would not be competent to offer evidence as to the disability of the insured beyond, or after, the date of the commencement of the action. Hence, it would not be competent in this case for the insurance company to offer evidence of the possibility of the insured's recovery at some future date.

This Court has consistently adhered to the definition of total and permanent disability as was announced in the case of *Taylor v. Insurance Company,* 106 S. C., 356, 91 S. E., 326, 327, L. R. A., 1917-C, 910: "He [the person] is deemed totally disabled when he is no longer

able to do his accustomed task, and such work as he has only been trained to do, and upon which he must depend for a living."

In the case of *Brown v. Insurance Company,* 136 S. C., 90, 134 S. E., 224, 225, the Court quotes the rule as announced in 14 R. C. L., 1316, as follows: "If the prosecution of the business required the insured to do several acts and perform several kinds of labor, and he is able to do and perform one only, he is as effectually disabled from performing his business as if he were unable to do anything required to be done, and while remaining in that condition he suffers loss of time in the business of his occupation. Nor does the provision contemplate absolute physical disability to transact any kind of business pertaining to one's occupation, but it is sufficient if his injuries are such that common care and prudence require him to desist from transacting any such business in order to effect a cure."

The test, therefore, is as was set out in the case of *Berry v. Insurance Company,* 120 S. C., 328, 113 S. E., 141, whether the disability contemplated by the agreement is inability to do substantially all the material acts necessary to the prosecution of the insured's business or occupation, in substantially his customary and usual manner.

In the light of these definitions and deliverances of the Court, we turn to a consideration of plaintiff's activities and lack of activities to show his disability. Testimony is that the insured's principal occupation consisted of running a store, trading in corn, cord wood, and cattle, and that in connection with these various activities he operated a truck, buying cattle, butchering and delivering them, buying cord wood and delivering that, buying corn and delivering same, and that the insured personally drove the truck, loaded and unloaded the same. That the insured also operated a small farm and did manual or physical labor. And the insured continued these activities until August, 1931, at which time he became disabled and has ever since

been unable to perform any physical or manual labor. Previous to insured's illness, which commenced in 1931, he was able to do hard work and did it. And that prior to this time, the insured did any kind of work he desired to do. The proof is that the insured, during the period covered in the complaint, was not able to perform any physical or manual labor. He was unable to drive his truck, unable to load and unload the same, unable to do any farming. It was necessary for him to employ others to carry on his work for him. The testimony of Dr. T. N. Dulin is that the insured suffered from intestinal sepsis. And he states that his condition during the period herein sued upon is such that he is incapacitated from performing physical or manual labor, and this condition is a permanent one.

There was sufficient evidence of total and permanent disability, which required the presiding Judge to submit this issue to the jury. The proof showing, and the undisputed testimony being, that the insured was no longer able to do his accustomed task, and that even though he could perform certain acts which required no physical or manual exertion, he was totally and permanently disabled, because he was prevented from performing his several kinds of labor to which he was accustomed and which he had performed.

Exceptions seven and ten allege error in the refusal to order a nonsuit and direct a verdict on the ground that no proof of disability had been furnished.

It is true that the plaintiff is required to file proof of disability with the company before he is entitled to the benefits of the disability provisions contained in his policy. *Parker v. Insurance Company,* 158 S. C., 394, 155 S. E., 617; *Black v. Insurance Company, supra; Craig v. Insurance Company,* 80 S. C., 151, 61 S. E., 423, 18 L. R. A. (N. S.), 106, 128 Am. St. Rep., 877, 15 Ann. Cas., 216.

The complaint alleges in paragraph four that in April, 1932, he made proof of such disability. A part of the answer of the defendant alleges "defendant denies each and every

other allegation of the complaint not herein expressly admitted, but it does admit that the plaintiff did furnish some forms in which he claimed to have been totally and permanently disabled, but defendant specifically denies that plaintiff is totally and permanently disabled within the meaning of the said policy of insurance." In view of this allegation of the answer, and the admission that the plaintiff did file the forms in which he set forth that he was disabled, the appellant cannot now be heard to complain, and certainly it was not incumbent upon the insured to prove this allegation of the complaint where the same was admitted by the answer.

However, attention is called to the cross examination of Dr. Dulin by appellant's counsel wherein Dr. Dulin was cross examined as to his statements contained in the proof of disability.

The following took place:

"The Court: When was this disability supposed to exist?

"Mr. Hildebrand: April 12, 1932."

The insured submitted to the company the basis of his claim for disability benefits, supported by the statement of his physicians.

It is the judgment of this Court that the judgment below be, and the same is hereby, affirmed.

MESSRS. JUSTICES STABLER, CARTER and BONHAM and MR. ACTING ASSOCIATE JUSTICE J. HENRY JOHNSON concur.