15387

YOUNGINER v. AETNA LIFE INS. CO. OF HARTFORD, CONN.

19 S. E. (2d), 452

October, 1940.

*Mr. Douglas McKay* and *Mr. John B. McCutcheon,* both of Columbia, for appellant,

*Mr. Norbert A. Theodore* and *Mr. Fred D. Townsend,* both of Columbia,

March 10, 1942.

The opinion of the Court was delivered by MR. ASSO-CIATE JUSTICE STUKES.

Respondent was employed in 1924 as a soliciting and collecting agent of Palmetto State Life Insurance Company and in August, 1925, there was issued by Aetna Life Insurance Company a so-called group policy of insurance upon the lives of the employees of the Palmetto Company and respondent was furnished the usual separate certificate of his participation. The policy provided a death benefit of $2,000.00 and a payment of the same amount in lieu of other benefits: "If any employee, before attaining the age of sixty years and while insured hereunder, becomes totally disabled and presumably will thereafter during life be unable to engage in any occupation or employment for wages or profit, or shall meet with the entire and irrecoverable loss of the sight of both eyes or of the use of both hands and both feet or of one hand and one foot, such employee shall be deemed to be totally and permanently disabled."

The monthly premium was remitted in the aggregate to the Aetna Company by the Palmetto Company and the latter deducted each employee's portion, his premium, from his monthly earnings.

By his complaint and the testimony presented by him upon trial respondent shows that he suffered a hernia when attempting to lift his automobile when it was "stuck" in the road when on his rounds at Ridgeway about January, 1936, after the policy had been in force for almost eleven years; that he immediately went to a physician there and

thereafter to Dr. P. E. Payne, of Columbia; that the existence of the hernia seriously impaired his ability to work caused him to do less soliciting of new business and resulted in his "debit" being cut in half by the Palmetto Company, whereupon he gave up his position in March, 1936, because his earnings were so reduced that he could not live upon the income. Afterward he obtained similar employment by other companies but has not since earned near so much as before the occurrence of the hernia, which he testified is due to its effect upon him. He wears a truss in winter and when he can in summer.

Dr. Payne testified that he examined the respondent in January, 1936, and again just before the trial and found that he was suffering from a left inguinal hernia, larger upon the last examination, the necessary result of which impaired respondent's ability to walk and to get in and out of his automobile. The doctor prescribed an operation as a cure and stated that it was one of the least dangerous of abdominal operations, not serious but requiring long subsequent rest for proper healing, and that the percentage of fatalities from such operations is hard to say but that in young persons, if the hernia is not strangulated, in his opinion the fatality rate is less than one per cent. Respondent is over forty years old.

He testified that he made request in 1936, of his superiors in the employment of the Palmetto Company for his benefits under the Aetna policy but was informed by them to the effect that he had no claim and that he telephoned the office of the Aetna Company in Columbia and was told by a man's answering voice that his claim would have to be presented to the Palmetto Company. The record indicates that he did nothing further toward collection until he consulted an attorney and this suit was brought in 1939.

The complaint sought damages in the sum of $3,000.00 against both defendants for the alleged fraudulent breach of the contract of insurance, accompanied by acts of fraud, and contains an allegation that the Palmetto Company was

the agent of the Aetna Company. The trial Judge refused separate motions for nonsuit and for direction of the verdict, and the jury found $2,000.00 actual damages, the face amount of the policy, against the Aetna Company alone, whence this appeal.

In its answer, the appellant admitted the existence of the policy and respondent's coverage and certificate but denied the existence of disability within the terms of the policy and his alleged telephone conversation with the Aetna office, and alleged that the policy was cancelled in so far as the coverage of respondent was concerned upon the termination of his employment by the Palmetto Company, and pleaded respondent's failure to comply with the express terms of the policy requiring the submission of evidence of disability during the continuance of the insurance and another provision that notice of disability must be given the insurer within one year after cessation of the payment of premiums "and if such notice is not given, the company shall not be liable for any payment on account of such * * * disability;" and the answer further set up a policy provision relating to the conversion of the insurance upon application made within thirty-one days after termination of employment by the Palmetto Company and that no application for such conversion had been made.

Upon the rendition of the verdict for actual damages against the Aetna Company alone, it unsuccessfully moved for a judgment *non obstante veredicto* upon the grounds, preserved in its exceptions, that the only reasonable inference from the evidence was that the respondent was not disabled within the coverage of the policy and that he was barred from recovery by his failure to follow medical advice and have a surgical operation. And these points are argued by appellant as questions I and II, which will be considered in order.

We think that we need make no further reference to the testimony than that above to demonstrate the correctness of the Court's conclusion that the issue

of fact as to whether the respondent became totally and permanently disabled within the terms of the policy during his employment by the Palmetto Company should have been submitted to and determined by the jury. The case is similar to and ruled by the recent decision of *Long v. Mutual Life Ins. Co.*, 197 S. C., 492, 15 S. E. (2d), 761, and similar authorities. No question is made with reference to the instructions given the jury upon this phase of the law.

The second question relates, as seen above, to the duty of respondent to undergo surgical treatment for his condition and expressly charges the trial Judge with error in instructing the jury that respondent is under no duty to so submit to an operation.

The question was injected in this litigation in an unusual manner. The defendants did not plead or offer evidence that the claimed disability might be terminated by a surgical operation and there was no request by appellant's counsel for instruction of the jury thereabout. Only the plaintiff's medical witness, Dr. Payne, the gist of whose testimony is given above and plaintiff, on cross examination by counsel for the Palmetto Company, mentioned the subject.

Thus the trial Judge did not touch upon it in his main charge to the jury and appellant's counsel expressly declined his invitation for requests for further instructions. However, the foreman of the jury, upon their return to the Court room after they had commenced their deliberation, inquired of the Court for light on the subject and recounted the medical testimony that an operation would probably effect a cure, and thereafter upon the request of respondent's counsel who called to his attention the decision of *Ford v. New York Life Ins. Co.,* 176 S. C., 186, 180 S. E., 37, the Court instructed the jury as follows: "An insured person is not required to submit to corrective surgical or medical treatment in order to recover benefits for disability under life policies, where the policy does not require submission to surgical treatment."

Although it was said in the *Ford case* that the question was academic, it was stated and answered as construed by the trial Court in this action. In the earlier case of *Jones v. Equitable Life Assur. Soc.,* 173 S. C., 213, 175 S. E., 425, the question was likewise discussed after decision of it was said to be unnecessary for the disposal of the case and the Court commented upon decisions of other jurisdictions touching the question and cited the annotation in 86 A. L. R., at page 360. Since that time, there is another annotation upon the subject, 126 A. L. R., 136.

However, we think again that it is unnecessary and, therefore, improper to pass upon this question despite the fact that counsel for appellant and respondent have argued it ably and at length. Respondent's duty to have submitted, or to now submit, to an operation to relieve his disability, in order to have been available as a defense to his action on the policy should have been alleged in the answer of the appellant. We think that there can be no doubt that·it would have been "new matter constituting a defense" and plainly within that language of Section 467 of the Code of Civil Procedure of 1932. It was, therefore, not an issue for trial and no mention of it as such occurs in the record until the inquiry of the foreman of the jury and the Court's instruction at the request of respondent's counsel, above set forth.

The Court should have instructed the jury, if at all, that the issue was not before them, but we do not think that it can reasonably be contended that the instruction that the supposed issue was not a defense resulted in harm or prejudice to the appellant. Under the circumstances here existing we see no difference between an instruction that certain matter is not a defense and an instruction that that certain matter is not for the consideration of the jury. Thus we conclude that even if the instruction was an incorrect statement of the substantive law, which we do not say for we are not deciding the question, no prejudice resulted to appellant. Nor do we think that the jury were

thereby confused; there was, indeed, no ground or reason for confusion. In this situation appellant's exceptions thereabout, numbered II and III, are necessarily overruled.

This is but an application of the well-known principle that the issues submitted to the jury should be confined to those made by the pleadings. *Heiden v. Atlantic Coast Line Railroad,* 84 S. C., 117, 65 S. E., 987, 988. In that case, which was a suit against the company for lost baggage upon its common carrier liability and the defendant offered evidence tending to establish a defense as a warehouseman or bailee, the Court held that in view of the answer, a general denial, the defense was not available and said: "On the trial of issues of fact in the courts it frequently, and almost necessarily, happens that a great deal of irrelevant testimony is admitted, because the trial judge cannot decide the relevancy of testimony until he hears it, and for other reasons not necessary to mention. But it is nevertheless the duty of the trial Judge to confine the issues submitted to the jury to those made by the pleadings. And there was no error in his honor's refusing to submit the special affirmative defense in this case to the jury."

Other cases to the same effect can be found by reference to 32 West's S. E. Digest, Trial, key 251 *et seq.* A late decision illustrative of the point is *Neal v. Clark,* 196 S. C., 139, 12 S. E. (2d), 921, 926, where it was said by the Chief Justice, speaking for the Court: "Exceptions charge that the trial Judge erred in refusing to charge appellant's third and fourth requests. These requests are not set out in the record, except in the exceptions, and we would be justified in refusing to consider them, but as set out in the exceptions, we see no error in refusing to charge them. As to that which relates to the administration of the estate of S. P. Clark, that evidence had no relation to the issues made by the pleadings in this case; and as to the other, the appellant had not pleaded a partial payment of his notes."

Appellant's Exception IV upon which its question III is based is as follows: "That the trial Court erred in refusing

to direct a verdict for the defendant upon the ground that no conclusion could be reached from the testimony in its entirety other than that the opportunity was at all times afforded the plaintiff, under the provisions of the policy and certificate of insurance, to avail himself of the rights provided therein and that his failure so to avail himself of such rights was chargeable to his own neglect and inaction."

As hereinabove adverted to, plaintiff testified without equivocation that after the accident which induced the hernia and resulting disability he talked to his superiors in employment in the Palmetto Company and the one to whom he was directed delayed a day and then replied that there was nothing which could be done for him about the policy and upon plaintiff's then saying that he would like to continue to carry it, he was informed that upon his leaving the service of the Palmetto Company, which he was then about to do, his policy would be cancelled; that he, the informant, had found out that nothing could be collected upon the policy. Plaintiff further testified that later on the same day he called the office of the Aetna Company and explained who he was, that he held the certificate of a certain number and had applied to the Palmetto Company for disability benefits and for the continuance of the policy, and was informed that all transactions concerning the policy must come through the Palmetto Company, and upon plaintiff's statement that he had been refused there, his informant from the Aetna office stated that there was nothing further that he could do ,"that any information pertaining to that policy or any disability would have to come from the Palmetto State Life, the people who were paying the premiums." Plaintiff further testified that he discussed the policy with the then superintendent of the Columbia office of the Palmetto Company who advised him that when he left the employ of that company his policy would be cancelled, that it was merely protection without cash value or other benefits and there was nothing to do about it; and that he was refused a blank upon which to make claim.

Despite rigorous cross examination, plaintiff was unshaken in this testimony and the contradictory evidence offered by defendant made an issue which required that the trial Court submit it to the jury for determination under proper instructions as to the law, which was done, so this exception must also be overruled.

The fourth and final question submitted by appellant is founded upon its Exception V and is as follows: "Should the Trial Judge have further amplified or clarified his general charge, upon the jury's return for additional instructions and at this defendant's request, with reference to the time in which the insured was required to file notice or claim for benefits under the terms of. the policy and certificate or required to make reasonable efforts thereabout."

As has been noted in the discussion of another exception, the jury was an inquiring one and voluntarily appeared after the main charge for further instructions, and several jurors questioned the Judge. On such occasion, the foreman said: "Some of them (jurors) want to know if they have a right, or if plaintiff has a right, waiting until now, to make a claim under the Statute or the South Carolina Law of Limitation." To this the Court responded by charging the six-year Statute of Limitations and that the suit was brought within that time.

But another juror spoke up, apparently unsatisfied with the charge, and, among other things, inquired whether the plaintiff had the right to make claim "at this late day," but the Court then declined to instruct further than already done in his main charge, stating his fear that he would infringe upon the jury's exclusive right to find the facts, but he did repeat, upon request of a juror, his definition of total and permanent disability, concerning which appellant makes no complaint. Then came the foreman's reference to Dr. Payne's testimony that an operation would probably effect a cure and the Judge's additional charge thereon, referred to above in our discussion of Question II.

Pending the summoning of the jury to give the added instruction, appellant's counsel addressed the Court at some length suggesting, but certainly not expressly requesting even informally, a further instruction as to the duty of the plaintiff with respect to filing his claim. The Court replied that he thought that he had charged as well as he could on that phase without charging upon the facts and in effect said that he had substantially covered the view expressed by counsel.

However, upon the return of the jury and its receipt of the additional instruction with respect to surgical treatment, a juror again inquired as to the difference between the Statute of Limitations and the policy requirement as to submission of claim, whereupon the Court made the following additional charge:

"Gentlemen, let me put it this way: With reference to the Statute of Limitations, the present suit is in time. Now, with reference to the acts required by the policy to be done, I don't know that I could do better than to repeat, as well as I can remember it, what I have charged you in my general charge. I stated that the contract here was in writing, and that it is the group insurance policy—that is the real contract—and I also stated that the certificates were issued to the employees, which incorporated some of the provisions of the master policy, and I then stated that it was the duty of a person holding a contract of any kind to read it and to familiarize themselves with it, and I further stated that the duty rested upon a person holding a contract to take proper and reasonable steps to protect his rights under the contract, and then I stated to the jury that, if one party to a contract unequivocally affirms that he will not be bound by it and repudiates the contract, the other party to the contract would have a right to bring a suit on the theory that the contract has been rescinded. I also stated that an insurer, an insurance company, if it expressly revokes a policy and denies liability under the policy, that the insured party has a right to file a suit under the policy of insurance.

"I don't think I can go further than that without getting again on the facts of the case. I wish I could help you gentlemen more, but, of course, I cannot, and, of course, would not want to, in the slightest degree, infringe upon your sole prerogative of passing on the facts of the case."

In his brief appellant's counsel frankly admits that he did not comply at all with the rule (No. 11 of the Circuit Court) concerning requests to charge but asks that such be overlooked because the Court below did not invoke it. He makes no complaint as to the correctness of the quoted instructions, but submits that they should have been elaborated. However, we have carefully read and reread counsel's remarks to the trial Judge, mentioned above, and his argument upon the question in his brief and fail to find merit in the contentions.

It is suggested therein that the Court should have expressly charged the law of waiver, but we do not think such was necessary. Furthermore, that is a doctrine beneficial to the insured in an insurance contract and failure to fully charge it can hardly be a proper matter of complaint on the part of the insurer. We are satisfied with the correctness of the charge just quoted and with its appropriateness to the evidence in this case. We have carefully read the authorities cited by counsel upon the point, but find none of them applicable.

All exceptions are overruled and the judgment affirmed.

MR. CHIEF JUSTICE BONHAM and MESSRS. ASSOCIATE JUSTICES BAKER and FISHBURNE concur.