## SALINAS v. BENNETT.

Where an adult partner executed a mortgage for partnership purposes on land conveyed to the partnership in their firm name, and signed the mortgage in the firm name and with the names of both partners, affixing a seal to all the signatures, and the infant partner, after reaching his majority, and with knowledge of the mortgage, makes no objection, continues the partnership and receives some of its profits, the mortgage is binding upon the land so mortgaged, and the mortgagee is entitled to a decree of foreclosure.

Before HUDSON, J., Barnwell, March, 1890.

This was a suit by A. J. Salinas & Son against Bennett Bros. The master's report was as follows :

The master, to whom, by an order of this court, all the issues herein, both of law and of fact, were referred, begs leave to report as his findings of fact :

1. That at the times hereinafter mentioned, the plaintiffs were partners, as alleged in the complaint and set out in the caption. That the defendants then were and now are partners, under the firm name set out in the caption.

2. That on the 14th day of May, 1888, the defendants bought a storehouse lot from H. C. Folk (the stated consideration being $525), taking the conveyance in the name of "C. W. Bennett and W. D. Bennett," under the firm name of Bennett Bros., paying a small portion in cash and giving to the said Folk a mortgage to secure the balance of the purchase money.

3. That on the 1st day of September, 1888, the defendants, by a written instrument, not under seal, and signed "Bennett Bros.," entered into an agreement with the plaintiffs whereby it was stipulated that the plaintiffs were to make advances to the defendants, as Bennett Bros., in money and supplies to the amount of at least $1,700; and that the defendants should ship to the plaintiffs a certain number of bales of cotton, and repay, on the first day of November following, all sums due to the plaintiffs, together with interest at the rate of 10 per cent. per annum. (All of which will more fully appear by the said agreement put in evidence and marked "A.") The proper execution of this agreement is admitted by the defendants. The plaintiffs performed their part of this contract, and under it the defendants are indebted to them in the sum of $1,875.90, with interest thereon at the rate of 10 per cent. since January 1st, 1889.

4. That to secure the performance of this contract and the repayment by the defendants of the advances made by the plaintiffs in money and supplies, there was delivered to the plaintiffs by one of the defendants, W. D. Bennett, in the name of the firm, a mortgage in form, over the storehouse lot, the partnership property of said Bennett Bros. This supposed mortgage bears the names of and purports to be signed by "C. W. Bennett and W. D. Bennett," and also "Bennett Bros." It appears,

however, from the evidence, that W. D. Bennett signed his own name and also "Bennett Bros.," and then, disguising his handwriting so as to resemble his brother's (see the testimony of the attesting witnesses), signed the name of his said brother and partner, C. W. Bennett.

The evidence would tend to prove that at the time of the execution of the mortgage, C. W. Bennett knew nothing of his name being on the paper. Although it is hard to believe that a young man who was then of the age of 20 years and 5 months, actively engaged in the business as partner, getting all the money used in the business from the plaintiffs, whom he knew, by his past experience with them, never lent money to him without security, should have been ignorant of the fact that the plaintiffs had this mortgage; and the difficulty of believing this is increased when he says that he knew that Folk's mortgage was paid before it was due. He then considered his brother, W. D. Bennett, the manager of the finances of the concern, and left to him such transactions as paying notes, drawing drafts, and taking up Folk's mortgage. From their relations in this business, W. D. Bennett thought he had the right to sign C. W. Bennett's name to the paper.

That believing the mortgage to be properly executed, and being ignorant of the minority of C. W. Bennett, the plaintiffs accepted the mortgage as security, and Bennett Bros. began immediately to draw drafts on them. Probably the first draft was in favor of H. C. Folk for $540, as payment of the balance and interest due on the purchase money for the storehouse lot thus mortgaged to plaintiffs. Accepting this draft, H. C. Folk cancelled and surrendered to said defendants his mortgage taken at the time of the purchase from him by Bennett Bros.

5. That the defendants, failing to comply with their agreement as to payments, were written to by the plaintiffs prior to January, 1889, relative to the mortgage, and C. W. Bennett then, according to his own testimony, became aware of the fact that his name was on the mortgage. He asked W. D. Bennett if his name was on it, and when told that it was, did not indicate that it displeased him, but simply said he ought to have been told of it before. He did not ask why W. D. Bennett had signed

it. He took no steps to repudiate the act, nor to notify the plaintiffs that his name was forged. On the contrary, with his knowledge and consent, his partner went in January or February (according to his testimony), 1889, "to see the plaintiffs to get time and a showing to pay the mortgage."

6. C. W. Bennett became 21 years of age on the 25th day of March, 1889. The copartnership existing between him and W. D. Bennett has never been dissolved; he is still engaged in the business of the firm; receives a share of the profits, and now admits and confirms the partnership.

This suit was commenced on the 1st day of October, 1889, over six months after C. W. Bennett became of age.

As applicable to the facts as thus found, two questions of law present themselves in the view taken by the master: I. Can one partner, in the execution of a mortgage over partnership property, to secure a partnership debt, bind the partnership under any circumstances? And if so, what circumstance are necessary to be shown? II. What is the liability of an infant partner who confirms the partnership after coming of age?

First. The property having been paid for out of partnership funds, used for partnership purposes, and expressly conveyed to the firm as a partnership, is undoubtedly partnership property; and it is equally certain that the mortgage was given to secure a partnership debt. It is stated as a general rule of law (Jones on Mort., sec. 121), that "a valid mortgage of real estate may be made by one partner to secure a partnership debt. * * * A mortgage of partnership real estate by one partner to secure a copartnership debt is valid; but otherwise when the opposition of the other partner is known to the creditors at the time of the execution of the mortgage." This rule, however, is modified when applied by our courts. The doctrine, as accepted by our Supreme Court, seems to have been expressed by Kent when he says, in vol. III., page 48: "An absent partner may be bound by a deed executed on behalf of the firm by his copartner, provided there be either a previous parol authority or a subsequent parol adoption of the act. Such authority need not be under seal, nor in writing, nor specially communicated for that purpose,

but may be inferred from the partnership itself and the subsequent conduct of the copartners implying an assent to the act."

The principle that one partner may bind the firm by a sealed instrument if the other partner subsequently ratify the act, is recognized in *Stroman* v. *Varn*, 19 S. C., 307, and in *Sibley & Co.* v. *Young & Napier*, 26 *Id.*, 415. The conduct of Bennett Bros., as a firm, with the knowledge and consent of C. W. Bennett after he became aware that his name was on the mortgage, was such as to confirm the plaintiffs in their belief that the mortgage was a valid and binding lien; and as if fully admitting the legality and binding force of it, they treat with the plaintiffs for longer time and further opportunity to pay it. This was a ratification of the act, where all the parties are adults, and the defence that the names were signed by one partner only cannot avail.

Secondly. As to the plea of minority by C. W. Bennett.

The contract herein sued upon is not void, but voidable only. "This is in law supposed to impose a qualified obligation, and having elected to be bound by it, the performance will be enforced." *Cheshire* v. *Barrett*, 4 McCord, 242. The general rule, stated in this the first of our cases on the subject, is: "When they (*i. e.*, infants) have attained full age, and are capable of exercising matured judgment in the review of past transactions, they may be permitted to affirm or disaffirm their contracts. They are supposed to be competent to determine how far these contracts have been beneficial and how far injurious, and having made the election to be bound or not, the law will, in most cases, confirm and enforce it."

· "Partnership is a voluntary *contract* between two or more persons for joining together their money, goods, labor, and skill," &c. Tom. Law Dict. It is not a compact whereby it is agreed that separate minor contracts shall be made or implied whenever each act is to be done; but partnership is a single and indivisible, though comprehensive, contract, and once entered into, its duties, powers, rights, and liabilities are defined and governed by the law. If, when a minor comes of age and has the opportunity, he fails to disavow the contract of copartnership entered upon during his minority, but, on the contrary, confirms it, he is

19—33

bound by all of its acts as fully as if he had been of age when each act was done. He cannot, after experience has tested the profits and losses of each partnership transaction, pick and choose which to confirm and which to repudiate. Judge Harper says, in *Miller & Co.* v. *Sims & Ashford:* "An infant partner, confirming the partnership after coming of age, subjects himself to all the liabilities of the firm incurred during his minority. * * * If Ashford, after coming of age, did in any manner concur in carrying on the partnership business, or *receive profits from it* (as C. W. Bennett did in the case at bar), I should think this amounted to a confirmation." 2 Hill, 479.

In brief, therefore, the master concludes :

1. That if C. W. Bennett had been an adult at the date of the execution of the mortgage, his actions since would have ratified, confirmed, and adopted the act of the other partner in signing it as his own, and thus rendered it a lien on the property.

2. That his remaining in the firm as partner, and drawing the profits therefrom after becoming of age, confirms the contract of partnership, and deprives him of any defence founded upon minority at the date of the execution of the mortgage.

Wherefore the master respectfully recommends that the prayer of the complaint herein be granted.

*Mr. L. T. Izlar,* for appellants.

*Messrs. Skinner & Williams,* contra.

September 29, 1890. The opinion of the court was delivered by

MR. JUSTICE McGOWAN. This was an action to foreclose a mortgage purporting to have been executed by the defendants as copartners—"Bennett Bros." (W. D. Bennett and C. W. Bennett)—to the plaintiffs, to secure an agreement not under seal, which was signed in the firm-name of "Bennett Bros.," and was for advances to be made to the defendants by the plaintiffs, to be used in the copartnership business. The balance for advances seems to have been $1,875, with interest as stipulated. The land mortgaged had been conveyed to the defendants as "Bennett Bros." on May 14, 1888, and the agreement and mortgage to the

plaintiffs bear date September 1, 1888. The land had been purchased for the firm, was used by the firm, and paid for by the firm. The mortgage has to it the names of both the defendants, the copartners, as well as the firm-name of "Bennett Bros.," all under seal.

The defendants answered and set up as defences: 1. The general denial. 2. That the mortgage was a sealed instrument, outside of the scope of the partnership, and was executed by one member of the firm without the authority, knowledge, or consent of the other member, who never ratified the same. 3. The defendant, C. W. Bennett, interposed the plea of infancy; that at the time of the execution of the mortgage he was under age, and had never since his majority ratified the same, &c.

The cause was referred to the master, G. Duncan Bellinger, Esq., who made a very full and satisfactory report (which should appear in the report of the case), finding as follows: "1. That if C. W. Bennett had been an adult at the date of the mortgage, his conduct since would have ratified, confirmed. and adopted the act of the other partner in signing it as his own, and thus rendered it a lien on the property. II. That his remainining in the firm as partner, and sharing the profits therefrom after becoming of age, confirms the contract of partnership, and deprives him of any defence founded upon minority at the date of the execution of the mortgage." Upon exceptions to this report, the cause came on to be heard by his honor, Judge Hudson, who overruled the exceptions, confirmed the master's report, and granted the usual decree in foreclosure.

From this decree the defendants appeal to this court, assigning error as follows: "I. That his honor erred, it is respectfully submitted, in overruling the defendants' exceptions to the master's report, and decreeing foreclosure in favor of the plaintiffs. II. That his honor erred, it is respectfully submitted, in overruling each one of said exceptions. III. That his honor erred in holding that one partner can bind the firm by an instrument under seal (mortgage) without the knowledge, consent, or subsequent ratification of the other partner. IV. That his honor erred in holding that one partner can execute a mortgage binding and creating a valid lien upon the real estate of the firm without the

knowledge, authority, or consent of the other partner, notwithstanding the non-consenting partner was a minor and never ratified the contract after reaching his majority. V. That his honor erred in holding that section 2023 of the General Statutes, requiring ratification of acts of infants after reaching their majority to be reduced to writing and signed by the party to be charged thereby, does not apply to contracts concerning partnership property. VI. That his honor erred upon the whole case, as shown by the evidence, in decreeing foreclosure; whereas, it is respectfully submitted, the complaint should have been dismissed."

Both the facts and the law of this case are so fully stated in the master's report, affirmed by the Circuit Judge, that we can add but little to it. Keeping in mind that the lot mortgaged was partnership property, there can be no difficulty. It is not denied that C. W. Bennett was a partner; that as such he joined in the purchase of the lot, paying for it and taking titles in the name of the firm. Afterwards, the mortgage was executed for partnership assets, of which he received his full share; and continued, being still a partner. We agree that this made the mortgage a lien upon the lot, whether C. W. Bennett, the alleged partner, actually signed it or not. "One partner may bind his copartners by deed, if authority to do so is fairly inferable from the evidence of their conduct and course of business." *Stroman* v. *Varn*, 19 S. C., 307.

If the mortgage was void because of the minority of C. W. Bennett at the time it was executed, and for lack of legal confirmation after he attained his majority, we must suppose that, for the same reason, his contract of partnership and taking title in the name of the firm was also void. And in that view the other partner, W. D. Bennett, was the sole partner and owner, and the mortgage executed by him alone was binding upon the lot as partnership assets. But we agree with the master and Circuit Judge, that the fact that C. W. Bennett remained in the firm as partner, drawing the profits therefrom after becoming of age, confirmed the contract of partnership, and subjected him to all the liabilities of the firm incurred during his minority. See *Miller & Co.* v. *Sims & Ashford*, 2 Hill, 479, and *Ihley* v. *Padgett*, 27 S. C., 300.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.

MR. CHIEF JUSTICE SIMPSON and MR. JUSTICE McIVER concurred in the result.