14093

DICKERT v. AETNA LIFE INS. CO.

(180 S. E., 462)

*Messrs. Mann, Plyler & Arnold,* for appellant,

*Messrs. Workman & Simpson,* for respondent,

June 13, 1935.

The opinion of the Court was delivered by MR. JUSTICE FISHBURNE.

This is an action to recover the lump sum disability benefits of $500.00, plus interest, provided for under the terms of a total disability clause carried in a group policy of life and disability insurance, issued by the defendant-appellant to American Spinning Company, under which policy the respondent, as an employee of the American Spinning Company, was issued a life and disability insurance certificate in the sum of $500.00 dated June 28, 1927. The premiums on this insurance policy were paid jointly by the American Spinning Company and the respondent from the date of its issuance through December 1, 1930, at which time the appellant canceled and terminated the policy. No premiums were paid after December 1, 1930, the cancellation date.

On October 7, 1927, the plaintiff, while such employee, had his right hand injured, necessitating the amputation of the arm five inches below the elbow. This constitutes the basis of plaintiff's claim for benefits under the total disability clause contained in the certificate issued to him by the appellant. We might add here that it is not denied that the plaintiff was fifteen years of age on the date of the issuance of the policy above referred to, and that he became twenty-one years of age on June 24, 1933.

A claim was made by the plaintiff, and presented to the defendant for the payment of the amount provided for in the certificate, based upon his alleged total disability by reason of the loss of his right hand. Payment was refused, and plaintiff brought this action against the defendant in the Court of Common Pleas for Greenville County on September 28, 1933, to recover the claimed amount.

The defendant answered generally, admitting the issuance of the policy of insurance, but denied the other allegations

of the complaint. For a second defense it was set up that this policy was canceled and terminated on December 1, 1930, and that no premiums had thereafter been paid; and by way of a third defense the disability was denied, and it was further denied that any notice or proof of disability had been filed "during the continuance of insurance on such employee," and that the first notice given was by letter through plaintiff's attorney on August 14, 1933, to which defendant replied on August 24, 1933.

On September 2, 1933, plaintiff submitted an affidavit to the appellant through his attorneys, setting forth in detail plaintiff's basis for his claim. It is admitted that no notice of the disability nor any proof thereof was furnished to the appellant prior to the letter of August 14, 1933, which was about two and one-half years after the policy contract had been canceled.

The case was tried before Judge Wm. H. Grimball and a jury on November 21, 1934, and at the conclusion of the evidence the defendant moved for a directed verdict upon grounds which are now before this Court on appeal, covered by its exceptions. The Court after argument overruled the motion for a directed verdict made by the appellant, and directed a verdict for the plaintiff for the full amount with interest.

The action was commenced September 28, 1933, about three months after plaintiff reached maturity, upon the following disability clause contained in the certificate held by the plaintiff under group policy No. 2999, issued by the defendant to the American Spinning Company:

"If any employee, before attaining the age of sixty years and while insured hereunder, becomes totally disabled and presumably will thereafter during life be unable to engage in any occupation or employment for wage or profit, or shall meet with the entire and irrecoverable loss of the sight of both eyes or the use of both hands or both feet or of one hand and one foot, such employee shall be deemed to be totally and permanently disabled. Upon receipt at the Home

Office of the (Insurance) Company, during the continuance of insurance on such employee, of satisfactory evidence of such disability, the (Insurance) Company will waive further payment of premium for the insurance upon the life of such employee and in lieu of all other benefits provided for on such life under this policy, will pay the amount of insurance in force upon such life at the time such disability commenced."

We need consider only that portion of the foregoing clause which deals with the total disability alleged by the plaintiff, inasmuch as his allegations do not bring him within the specific injuries named in the policy deemed to be totally and permanently disabling.

■ As a preliminary point raised by the defendant and not seriously contested by the plaintiff, we hold that the plaintiff after reaching full maturity ratified the policy contract entered into during infancy by bringing this action to recover the benefits thereof, and by preparing and forwarding the affidavit detailing the grounds of his claim hereinabove referred to.

We now proceed to consider and pass upon the issues raised by appellant's exceptions although we may not take them up in the order in which they appear in the case.

■ Did the policy contract after ratification by the minor become valid and in full force *ab initio* and *cum onere?*

The general rule is—and the decisions of our Court are in accord therewith—that when a minor ratifies a contract after he becomes of age it becomes valid and in full force from the beginning.

"From the rule already stated, that the general contracts of an infant are not void, but voidable, that is, they are *de facto* contracts, though subject to the possibility of disaffirmance, it logically follows that, when the infant has come of age and ratified a contract made in infancy its sole infirmity is removed, and it should be treated as having been validly in force from the beginning. The ratification is not

to be considered a new contract, but merely the definite abandonment of the optional right to disaffirm." 14 R. C. L., page 246.

"The effort of the early authorities to classify contracts as beneficial or harmful, and to make the opinion of the Court as to the proper classification of a certain contract conclusive as to its validity, and the technical distinction between contracts effected by manual delivery and those not so effected, have been abandoned in the modern cases. The infant himself is permitted, when he has become of age, to determine what contracts are and what are not for his interest, and on that basis to ratify or avoid them; and he is permitted to assume the burden of a contract, even if it be clearly disadvantageous to him, if he deems himself under moral obligation so to do. In short the modern doctrine is to the effect that, except as to a narrowly limited class of contracts which are valid and binding upon him (we interpolate 'necessaries') an infant's contracts are voidable, but not void." 14 R. C. L., page 223.

In a footnote to the foregoing text are cited cases from practically every jurisdiction of this country, including our own cases of *Cheshire v. Barrett,* 4 McCord, 241, 17 Am. Dec., 735; *Little v. Duncan,* 9 Rich., 55, 64 Am. Dec., 760.

In the case of *Ihley v. Padgett,* 27 S. C., 300, 3 S. E., 468, 471, our Court uses this language: "Thus, if an infant purchase land, and continue in possession after he attains full age, it will be regarded as a confirmation of the purchase; or if he makes exchange of the lands, or if he take a lease rendering rent and continue in possession several years after he comes of age, it is a confirmation of the contract *ab initio,* and he is bound for the rent in arrear. In short, any word or action from which his assent to the contract may fairly be deduced, will be regarded as a confirmation," citing *Cheshire v. Barrett, supra.*

The case of *Salinas v. Bennett,* 33 S. C., 285, 11 S. E., 968, 970, is to the same point. There the Court in discussing the liability of a minor who was a partner,

and whose partnership firm had executed a mortgage during his minority held that the minority was no defense in the light of his acts after becoming of age, which amounted to a confirmation of the said note and motgage, through same were executed dur-ing his minority, the act of confirmation being that the said minor remained in the firm, and shared in the profits after he became of age. In the opinion the Court says: "But we agree with the Master and Circuit Judge that the fact that C. W. Bennett remained in the firm as partner, drawing the profits therefrom, after becoming of age, confirmed the contract of partnership, and subjected him to all the liabilities of the firm incurred during his minority." See *Miller v. Sims*, 2 Hill, 479, and *Ihley v. Padgett*, 27 S. C., 300, 3 S. E., 468.

We know of no sound reason why these principles of law should not apply to insurance contracts entered into by infants and later, after their maturity, ratified by them.

The plaintiff having ratified the policy contract in this case must be held to have ratified it in its entirety.

An infant cannot split up an entire contract and ratify so much thereof as he considers to his advantage, and avoid the balance, or hold the other party to what he contracted, while the infant escapes his own obligation, but the contract must be ratified or avoided as a whole. 31 C. J., 1061, also 31 C. J., 1013.

In Vance on Insurance—Hornbrook's series (2d Ed.),— page 109, we find: "There are many conditions under which it is provident and wise for an infant to insure his property or his life, and any rule of law which would prevent his doing so would be hurtful in its effect and a grave discouragement to the enterprise of infants. Accordingly, it is uniformly held that an infant's contract of insurance is perfectly valid until disaffirmed by the infant or his representative. This right of disaffirmance, however, is personal to the infant, and cannot be exercised by the adult insurer."

Page 110: "It would seem to be a principle too manifestly true to need the support of authority or argument, that an infant party insured must either affirm or disaffirm his contract *in toto*. Every consideration of reason and justice would be disregarded if he were allowed to affirm such terms of the policy as are beneficial and disaffirm those that are found burdensome."

Discussing this point in *Heilig v. Ætna Life Insurance Company*, 152 N. C., 358, 67 S. E., 927; 928, 20 Ann. Cas., 1290, the Court concludes: "Upon ratification or affirmance the contract stands *cum onere, not ex onere."*

Having held that the plaintiff upon reaching maturity ratified the contract *in toto* and *ab initio,* we come to consider the effect of his failure to give to the defendant due notice and proof of his alleged disability *"during the continuance of insurance on such employee"* (italics ours), this being the pivotal question in this appeal.

There is perhaps no subject of the law about which there has been more apparent as well as more real conflict of opinion than the effect to be given to contracts of infants. It is true that there is less conflict at the present day than formerly, and that some of the erroneous positions previously taken have been abandoned, but there is yet much confusion, inconsistency, and difference of opinion, as general reference to the cases will show. Some sentimental notions entertained at the beginning concerning the incapacity of infants and the favor with which the persons and property of infants should be regarded are no doubt responsible for much of the uncertainty and error which time has found so difficult to remove. Experience has amply shown and fully demonstrated that when Courts permit sound sense and principles of justice to all concerned to be overshadowed by the idea that one of the parties must be favored, the results are certain to be unsatisfactory. While infants should at all times and in all proper cases be protected from the consequences of their inexperience and immaturity of judgment, it should not be forgotten that their protection

does not require the situation of persons who have dealt with them in good faith to be entirely overlooked. In discussing this phase of the case, however, we are not dealing with an infant, but we are dealing with one who having reached majority has ratified the contract which he made in infancy.

In the case of *Parker v. Jefferson Standard Life Insurance Company,* 158 S. C., 394, 155 S. E., 617, 618, the Court had under consideration a claim for disability benefits, where the plaintiff had not furnished proofs until three years after the commencement of the disability for which he was claiming benefits for prior years. The Court, in an opinion by Hon. M. L. Smith, Acting Associate Justice, and unanimously concurred in, denied such claim, and held that the policy provision requiring as a condition precedent the furnishing of the proofs was reasonable, valid, and binding. The disability clause provided that "upon receipt of due proof" the company would grant certain benefits. In holding the provision binding, the Court had the following to say:

"Yet the policy of insurance represents a solemn contract where the parties, legally capable of contracting, have voluntarily agreed upon their own terms and consented to their own conditions, and, in the absence of waiver or a prevention of performance by one party through the act of the other pursuant to a liberal construction in cases of doubt and ambiguity in favor of the insured, must be enforced in accordance with its plain meaning, and not violated or disregarded by the Courts. *Perkins v. Life Insurance Company,* 93 S. C., 88, 76 S. E., 29.

"It is, indeed, difficult to conceive how provisions in a contract purporting to evidence the mutual intention of the contracting parties could be freer from doubt or ambiguity than those under consideration. The clause in question simply provides in plain, unmistakable language that, 'upon receipt of due proof' by the company of the disability of the insured, the primary and initial act upon which a purely executory clause becomes operative, the

company will, at the option of the insured, agree in writing," etc.

Further the Court says: "The reasonableness and validity of such notice requirements are not only recognized and sustained by the Courts (*Craig v. Insurance Company*, 80 S. C., 151, 61 S. E., 423, 18 L. R. A. (N. S.), 106, 128 Am. St. Rep., 877, 15 Ann. Cas., 216) but furnish a proper administrative protection against imposition and fraud, which would be of little practical value if the notice and demand could be so long deferred as to prevent a timely and effective investigation of the claim."

The above rule was relaxed in the case of *Garner v. Volunteer State Life Insurance Company*, 171 S. C., 1, 171 S. E., 370, 372, where the Court had under consideration a claim for disability benefits under an insurance policy, and held that failure to give notice and furnish proof of disability contemplated by the policy in order to recover disability benefits may be excused when it is impossible for insured to give notice and furnish proofs, as in a case of insanity. *Levan v. Metropolitan Life Insurance Company*, 138 S. C., 253, 136 S. E., 304.

However, the Court expressly adhered to the holding in the *Parker case*, saying: "This Court adheres to the principle recognized and stated in *Parker v. Jefferson Standard Life Insurance Company, supra*; but, in our opinion, the facts in the case at bar take it out of this rule."

In our opinion the facts in the case at bar do not take it out of the rule announced in *Parker v. Jefferson Standard Life Insurance Company, supra.*

Plaintiff having fully ratified the contract did so *in toto,* and could not relieve himself of the stipulation in the contract which was a condition precedent, that evidence with notice and proof of disability must be given at the home office of the defendant company *"during the continuance of insurance on such employee."* And admittedly having failed to give such evidence of his disability

as was required in the contract, he must be held in the absence of waiver to have forfeited his contractual rights.

It is urged upon us by respondent that this question should be ruled by the decision in the case of *Levan v. Metropolitan Life Insurance Company*, 138 S. C., 253, 136 S. E., 304, where the insured, Levan, an adult, was excused on the ground of insanity from furnishing proof of such disability, which was a condition precedent to be performed before the company could be required to waive the premiums which fell due during such insanity; insanity in that case was one of the disabilities insured against.

We are unable to see that the decision in the *Levan case* is pertinent to the issue raised here. The facts there were entirely different. We cannot say in a legal sense under the facts in this case that insanity and infancy are synonymus terms. The sole reason advanced by the plaintiff in the case at bar for his failure to give the required notice was his infancy. We hold that having ratified the contract after reaching maturity, the contract stands *cum onere,* not *ex onere.*

In respondent's brief it is suggested that it was prejudicial to the rights of the plaintiff for the defendant to cancel and terminate the policy contract while the plaintiff was still under age. We are unable to pass upon the propriety or legality of this act. The original group policy issued by the defendant to American Spinning Company was not introduced in evidence at the trial of this case, constitutes no part of the record on appeal, and we have no way of determining what provisions it contains with reference to cancellation. Plaintiff testified that the certificate issued to him under this policy was in his possession, and that he knew when it was canceled. If it had been intended to ask the Court to pass upon this question, the original policy should have been introduced in evidence.

If it were not for the presence of the question of waiver in this case, we would at this point be compelled to reverse the judgment of the lower Court,

and award judgment in favor of the defendant, but that issue is here, and will have to be passed upon. The respondent states the question as follows: "Did the insurer waive provisions of the contract as to the time of notice by willingly considering the matter and accepting full proofs of the insured's loss?"

As has often been held, waiver is the voluntary, intentional relinquishment of a known right, which is express waiver; or it may follow from a course of dealing; or from the conduct of the insurer which with knowledge of an act which entitled it to claim a forfeiture, enters into negotiations with the insured which recognize the continued validity of the policy, and induce the insured to incur expense and trouble in the belief that his loss will be paid. This would be implied waiver. This rule is most frequently applied to a request for proofs of loss from the insured after knowledge of the forfeiture. *Whaley v. Guardian Fire Insurance Company,* 124 S. C., 173, 117 S. E., 209; *Curnow v. Insurance Company,* 46 S. C., 79, 24 S. E., 74; *Norris v. Insurance Company,* 57 S. C., 358, 35 S. E., 572; *Kingman v. Insurance Company,* 54 S. C., 599, 32 S. E., 762.

In this case the doctrine of waiver is predicated upon the letter written to the defendant by plaintiff's attorney, of date August 14, 1933, which referred to the group policy by specific number issued to the American Spinning Company, recited the injury to the plaintiff while an employee of the spinning company on October 27, 1927, with the assertion that the injury resulted in total disability as defined under the laws of this State, and claiming the sum of $500.00 under the certificate issued to plaintiff; and further stated: "Your policies generally provide that proofs of loss must be submitted within a specified period of time, but in this case we wish to advise that Mr. Dickert only reached maturity on June 24, 1933, and immediately thereafter employed us to look into this matter for him."

The defendant replied as follows:

"Ætna Life Insurance Company
"Hartford, Connecticut
"Life Disability Claim Division
"August 24, 1933.
"Workman & Simpson, Attorneys at Law,
"Blue Building, Greenville, S. C.,
"In re: Winford Eugene Dickert.
"Gentlemen: We acknowledge your letter of August 14 in which you advise us that Mr. Dickert on October 7, 1927, met with an accident, and as a result his right arm was cut off about 5″ below the elbow. Your letter also indicates that in your opinion Mr. Dickert has a claim under Group Certificate that had been issued to him under policy carried by the American Spinning Company.

"We are not much on this attorney business but we are wondering whether or not Mr. Dickert cannot be charged with Laches. What do you think? Certainly if he had any rights at all he has been sleeping on them.

"There is nothing, of course, to justify us in failing to consider what you might have to say on the matter, but it appears to us, frankly, that there is a long hard road ahead of Mr. Dickert before he can reach the summit of his claim.

"If you care to outline any further facts, we, of course, will consider them.

"Yours truly,

"Joseph Wright,
"Chief Claim Examiner."

"J. Wright: BC."

The above letter was followed by an affidavit sworn to by the plaintiff under date September 2, 1933, and which was mailed to the defendant and retained by it. It is not necessary to reproduce this affidavit. It is sufficient to say that it very fully set forth the facts constituting the basis of plaintiff's claim.

The trial Judge made no ruling upon this point, nor was it necessary for him to do so under his view of the case.

He held that the infancy of the plaintiff relieved him of the necessity of giving the defendant notice of his claim for disability benefits required by the policy contract. If he had ruled otherwise, then, no doubt, the question of waiver would have confronted him.

We are unable to adopt the view of counsel for the plaintiff that the letters and affidavit above referred to, singly or as a whole, constitute waiver or evidence of waiver. We think that the whole tone and context of the quoted letter decisively negatives any such theory. Only one fair, just and legitimate inference can be drawn here, and that is, that there was no intention to waive the forfeiture. The defendant in this letter only followed the general rule and practice of courtesy, usual between business men, in expressing its adverse attitude on the plaintiff's claim, and it would be strange, indeed, for this Court to penalize such conduct by holding that it indicated an intent to waive or to "negotiate," when exactly the opposite was expressed.

It is the universal rule that Courts frown upon forfeiture, and lean towards waiver in insurance cases, and we adhere without reservation to this generally recognized and wholesome principle, but, even so, such adherence must not be permitted to prevent or obscure a clear perception and just appraisal of the natural and usual meaning of words. We are under no duty to place a strained and unnatural construction and interpretation upon the language used in the quoted letter in order to give it the mien and semblance of waiver, even in cases affecting insurance companies. They, too, look to the Courts for justice and fair dealing.

It is the plaintiff's misfortune that he either slept on his rights or misconceived them. And while our natural sympathies are quickened for him on account of his youth and crippling injury, this does not justify us in doing that which in law and fact is unjustified.

A consideration of the remaining exception would be academic.

The Court below erred in refusing the defendant's motion for a directed verdict.

It is the judgment of this Court that the judgment of the Circuit Court be reversed, and that the case be remanded to that Court for the entry of judgment in favor of the defendant under Rule 27.

Mr. Chief Justice Stabler and Messrs. Justices Carter, Bonham, and Baker, concur.