14399

WAY v. PACIFIC MUTUAL LIFE INSURANCE COMPANY OF CALIFORNIA

(188 S. E., 805)

*Messrs. Nicholls, Wyche & Russell,* for appellant,

*Messrs. Lyles & Daniel,* for respondent,

December 15, 1936.

The opinion of the Court was delivered by Mr. Justice Bonham.

We compile from the statement in the record, the pleadings, and testimony the following account of the facts out of which this litigation arose:

The respondent was insured in the appellant company under a life policy, which also carried a total disability clause. October 1, 1935, respondent brought action against appellant to recover for alleged total disabilities, and on trial of the case had a verdict in his favor. This appeal followed.

The compaint alleged that plaintiff became totally and permanently disabled on October 1, 1927, and that he gave defendant notice of such disability October 15, 1929. That the disability which befell him was a complete mental breakdown, technically known as "Manic Depressive Psychosis," which for a long time prevented him from preparing and filing the proof of claim; but as soon as he recovered sufficiently to do so, to wit, about October 15, 1929, he filed such proof with the defendant. That defendant refused payment, and plaintiff, to save his insurance, continued to pay his premiums. He asked judgment for the recovery of such

premiums, and disability payments at the rate of $20.00 per month from October 1, 1927, through September, 1935, when this action was begun.

For answer, the defendant admitted its corporate capacity and the issuance of the policy and denied all other allegations of the complaint. For further answer, it alleged: "That the payment of any disability benefits under the terms of the said policy was conditioned upon the assured giving immediate notice in writing to the defendant at its home office of the commencement of such permanent and total disability, and further expressly conditioned, upon the assured, within one hundred and twenty days after the commencement of such disability, filing due proof thereof." That plaintiff did not give such notice in writing of the commencement of total and permanent disability, and did not file any proof thereof within 120 days of its commencement.

On the trial motions for nonsuit and directed verdict were made in due time by defendant, and refused.

The appeal is based on about eighteen exceptions, which allege errors in refusing the motion for nonsuit and that for directed verdict, for the admission of testimony, and errors in the Judge's charge.

In the opinion of this Court, the determination of a cardinal question involved in the case will dispose of the appeal and render all other questions academic.

The policy sued on contains this provision: "That immediately after the commencement of the permanent total disability full particulars thereof shall be given in writing to the company at its Home Office, together with the then address of the insured; and that within one hundred and twenty days after the commencement of such disability there shall be given the company at its home office due proof thereof; and that annually thereafter due proof of the continuance of such disability shall be given, if required by the company."

The answer alleges that such notice of the commencement of the alleged disability was not given, and the proof of

claim was not filed within one hundred and twenty days of the commencement of such disability. In fact, the complaint admits that such proof was not filed until about two years later, to wit, about October 15, 1929. Plaintiff seeks to avoid the consequences of this failure to comply with the requirements of the policy by saying that because of his complete nervous and physical breakdown he was unable to prepare and file a proof of claim until he had recovered sufficiently to do so.

In the case of *Craig v. Insurance Co.,* 80 S. C., 151, 61 S. E., 423, 425, 18 L. R. A. (N. S.), 106, 128 Am. St. Rep., 877, 15 Ann Cas., 216, Mr. Justice Woods for this Court, considering the provision of a policy akin to that we are considering, said: "The provision on which the defendant relies is not unreasonable, but, on the contrary, it is evident some such stipulation is necessary to the protection of the defendant as an insurer against sickness to enable it to investigate alleged illness, and thus protect itself against imposition. [Citing authorities.] "It is true that the plaintiff is required to file proof of disability with the company before he is entitled to the benefits of the disability provisions contained in his policy." *Ford v. New York Life Ins. Co.,* 176 S. C., 186, 180 S. E., 37, 42. Citing *Parker v. Ins. Co.,* 158 S. C., 394; 155 S. E., 617; *Black v. Ins. Co.,* 171 S. C., 123; 171 S. E., 617; *Craig v. Ins. Co.,* 80 S. C., 151; 61 S. E., 423, 18 L. R. A. (N. S.), 106; 128 Am. St. Rep., 877, 15 Ann. Cas., 216.

In the case of *Hardin v. Southeastern Life Ins. Co.,* 176 S. C., 337, 180 S. E., 210, 213, this Court said: "More than five months thereafter he died, but he never gave any notice to the company or filed with it any proof of disability. Under the contract of insurance, he was required to do this in order to obtain the benefit of waiver of the payment of premiums. We hold that this provision is not an unreasonable one, and was not, under the undisputed evidence in the case, impossible of performance by the insured."

The case of *Dickert v. Aetna Life Ins. Co.*, 176 S. C., 476, 180 S. E., 462, 466, is an illuminating one along the line of our present investigation. The plaintiff, an infant employee of a textile company, was insured under a group policy. When he was fifteen years of age he suffered an injury which caused the amputation of his forearm. This occurred October 7, 1927. He came of age June 24, 1933. Liability being denied, action was brought September 28, 1933. The answer alleged, among other defenses, that no notice or proof of disability had been filed during the continuance of the insurance. It was admitted that no notice of disability, or proof thereof, was furnished the company prior to the letter of August 14, 1933. After he came of age the plaintiff ratified the insurance contract; he was bound by it *ab initio*. The Court said: "Plaintiff having fully ratified the contract did so in toto, and could not relieve himself of the stipulation in the contract which was a condition precedent, that evidence with notice and proof of disability must be given at the home office of the defendant company 'during the continuance of the insurance on such employee.' And admittedly having failed to give such evidence of his disability as was required in the contract, he must be held * * * to have forfeited his contractual rights."

It is needless to cite other authorities of this nature. The plaintiff in this present action recognizes that he was bound to give notice and proof of his disability in accordance with the terms of his contract of insurance. He admits that he has not done so within the time prescribed by the contract, and seeks to excuse his failure to do so by the plea that he was physically and mentally unable to do so until he had recovered sufficiently. Does the evidence furnished by him sustain his plea?

The malady which he claims began October 1, 1927, and rendered him incapable of giving the required notice and proof, is known, it seems, by the allegation of his complaint, as "Manic Depressive Psychosis."

The two physicians who testified for plaintiff thus described this malady and its effects:

Dr. Houseal, who was his family physician and attended him from the time of his attack on October 1, 1927, said of his condition: "His mental condition was of that kind that is said to be blue. He stayed in bed. He would reply to questions but considerably slowed down in his thought."

Dr. Sparkman said of plaintiff's condition: "He used to be bright and lively and now he gives you the impression of one that is depressed."

His wife testified that he got in bed and did not want to see any one; that "he had no initiative"; "would do what he was told; he was pitiful." He signed checks for the business.

Mr. Wessinger was his clerk, managed the plaintiff's mercantile business, drug store, in his absence, saw him constantly. "He tried to help with whatever he could do."

Dr. Way testified that he went back to the store in January, 1929. He went to bed again that year. Got up from that sickness; after that sold his store.

These things occurred during the time he said he was too incapacitated by his infirmity to give the notice and proof of his disability. Yet during this time he was paying his premiums. We are not now discussing whether at the time (October 15, 1929) when he claims to have given notice or since that time, he became totally disabled by his "psychosis," but it is significant that he was in charge of a large drug store in Spartanburg, and another in Saluda, S. C.; that he engaged in work as a traveling salesman for another firm; that he traveled for the sale of his own preparation, patented medicine "Way's Diarrhoea and Dysentery Remedy." He took a course of study for the purpose of engaging in the business of soliciting life insurance. There are a number of letters written by him to the manager of the insurance company with which he proposed to ally himself, which evince the acute mind of a well-informed

person, possessed of a full understanding of all those things in which he is interested.

The doctors and the plaintiff's wife testify that he has grown worse; that there is a change in him. The doctors testify that his disease is "progressive." Here appears a strange thing. In the trial of the case in February, 1936, the plaintiff was examined and cross examined by able counsel; perusal of his testimony will convince any candid mind that there is no element of any mental defect apparent about him. According to the medical men he must be, in February, 1936, far worse off mentally and physically than he was in 1927, 1928, and 1929. It stands to reason that if that statement is true he was, in 1927, 1928, and 1929 fully able mentally and physically to prepare and file notice and proofs of his alleged disability.

Respondent's attorneys lay stress upon the case of ■ *Levan v. Metropolitan Life Ins. Co.*, 138 S. C., 253 136 S. E., 304. No one will deny or question the well-established rule in this jurisdiction, as followed in the *Levan case, viz.*, that where the insured is unable to give the notice and furnish the proof of his disability, he is relieved of the forfeiture of the benefits under the terms of his policy. In the *Levan case* the insured became insane, violently and dangerously insane. He was committed to the insane hospital, where he died.

Nor does the case of *Edgefield Mfg. Co. v. Maryland Casualty Co.*, 78 S. C., 73, 58 S. E., 969, give comfort to the respondent, because the record discloses that when the notice should have been given, the office force all had small pox and failed to discover the policy.

If, for the sake of argument, it should be conceded (which is not done) that plaintiff was incapacitated from giving notice and proof of his disability when he became sick in October, 1927, he was well enough in January, 1929, to return to his work at the drug store and engage in all of its activities, and yet he does not claim to have sent any notice or proof of disability until October 15, 1929.

The evidence that plaintiff did not file any notice or proof of disability, as required by the terms of his policy, fails utterly to show that it was not possible for him to do so because of his disability, and it being admitted that such notice and proof were not given and filed, it follows that plaintiff is not entitled to maintain this action, and it was error not to grant the motion for directed verdict in favor of defendant.

The judgment of the lower Court is reversed, and the case is remanded with direction to enter judgment for defendant under Rule 27.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES CARTER, BAKER and FISHBURNE concur.